**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| MUKTA PATEL, ASHOK PAREKH, JITU PATEL, and ANDREA and PHIL BOSWELL, on Behalf of Themselves and All Others Similarly Situated, | : : : : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : : | Case No.:  1:09-CV-3684-CAP |
| MUKESH C. PATEL, R.C. PATEL, EDWARD L. BRISCOE, SCOTT DIX, BRIJ M. KAPOOR, MUKUND R. PATEL, NARENDA D. PATEL, DHIRU G. PATEL, and BALVANT PATEL, | : : : : : : : : | |
| Defendants. | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE**
**FEDERAL DEPOSIT INSURANCE CORPORATION'S MOTION**
**TO INTERVENE, STAY PROCEEDINGS, AND EXTEND**
**TIME FOR FILING PLEADING IN INTERVENTION**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................. ii

STATEMENT OF FACTS ...................................................................3

    Founding and Operations of Haven Trust .......................................3

    The Collapse of Haven Trust.........................................................5

    Plaintiffs Sue to Recover Their Damages .......................................6

ARGUMENT ...................................................................................12

    1.    The FDIC Fails to Satisfy Rule 24(a)(2)............................12

        a)    The FDIC's Motion is Untimely...............................12

        b)    The FDIC Lacks an Interest in This Case.................15

        c)    The FDIC's Interests are Not Impaired ...................20

    2.    The FDIC Fails to Satisfy Rule 24(b)(1)(B) ......................22

    3.    The Court Should Not Stay This Case ...............................23

CONCLUSION ................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)......................................................................22

*Bogle v. Bragg*,
  248 Ga.App. 632, 548 S.E.2d 396 (2001) ........................................18

*Bumble Bee Foods, LLC v. Malo, Inc.*,
  No. CV 109-042, 2009 WL 2762683 (S.D. Ga. Aug. 31, 2009).......................14

*Chiles v. Thornburgh*,
  865 F.2d 1197 (11th Cir. 1999) ...................................................12, 22

*Daniels v. Perry, et al*,
  2:08-cv-05073-GW-VBK (W.D. Cal. filed Aug. 1, 2008)................................21

*FDIC v. Jenkins*,
  888 F.2d 1537 (11th Cir. 1989) ............................................18, 23, 24

*FDIC v. Van Dellen*,
  No. 2:10-cv-04915-DSF-SH (C.D. Cal. filed July 2, 2010)...............................21

*Greenfield v. Shuck*,
  867 F. Supp. 62 (D. Mass. 1994)........................................................17

*Hayes v. Gross*,
  982, F.2d 104, 109 (3rd Cir. 1992)......................................................24

*Howard v. Haddad*,
  916 F.2d 167 (4th Cir. 1990) .....................................................17, 24

*I.A. Durbin, Inc. v. Jefferson Nat'l Bank*,
  793 F.2d 1541 (11th Cir. 1986) .......................................................21

*In re Atlantic Fin. Fed. Sec. Litig.*,
  Civ. A. No. 89-0645, 1991 WL 98757 (E.D. Pa. May 29, 1991).......................24

*In re Haven Trust Bancorp., Inc.*,
  No. 09-64497-mgd (Bankr. N.D. Ga.)........................................................ *passim*

*In re Premiere Technologies Inc.*,
  No. 1:98-CV-1804-JOF, 2000 WL 33231639 (N.D. Ga. Dec. 8, 2000)............17

*In re Southeast Banking*,
  827 F. Supp. 742 (S.D. Fla. 1993) ................................................................23, 24

*In re Washington Mutual Inc. Sec., Derivative & ERISA Litig.*,
  694 F. Supp. 2d 1192 (W.D. Wash. 2009) ........................................................21

*Ledford v. Peoples*,
  605 F.3d 871 (11th Cir. 2010) ...........................................................................18

*Lubin v. Skow*,
  2010 WL 2354141 (11th Cir. June 14, 2010)..................................13, 16, 18, 20

*ManaSota-88, Inc. v. Tidwell*,
  896 F.2d 1318 (11th Cir. 1990) ........................................................................15

*Medkser v. Feingold*,
  307 Fed. Appx. 262, 2008 WL 4797512 (11th Cir. Nov. 5, 2008) ...................17

*Mid-Continent Cas. Co. v. Basdeo*,
  No. 08-61473-Civ, 2009 WL 2450386 (S.D. Fla. Aug. 7, 2009)......................19

*Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*,
  425 F.3d 1308 (11th Cir. 2005) ........................................................................19

*Musick, Peeler & Garrett v. Employers Ins. of Wausau*,
  508 U.S. 286 (1993)..........................................................................................17

*Tooley v. Donaldson, Lufkin & Jenrette Inc.*,
  845 A.2d 1031 (Del. 2004) ...............................................................................18

*U.S. v. Georgia*,
     Civ. No. 1:96-CV-700-JEC, 1996 WL 453543 (N.D. Ga. Apr. 9, 1996) .......... 15

*U.S. v. Peoples Benefit Life Ins. Co.*,
     271 F.3d 411 (2d Cir. 2001) ............................................................... 16

*Walker v. Jim Dandy Co.*,
     747 F.2d 1360 (11th Cir. 1984) ........................................................ 13

*Waterford Twp. Gen. Employees Ret. Sys. v. SunTrust Banks, Inc.*,
     No. 1:09-CV-617-TWT, 2010 WL 3368922 (N.D. Ga. Aug. 19, 2010)............ 20

## STATUTES

12 U.S.C. § 1821(d)(2)(A)(i) ..................................................................... 19

15 U.S.C. § 78u-4(a)(3)(A)(i) ................................................................... 7

Lead plaintiff Mukta Patel (Dkt. 22), and additional plaintiffs Ashok Parekh, Jitu Patel, and Andrea and Phil Boswell, on behalf of themselves and the proposed class, respectfully submit this memorandum in opposition to the Federal Deposit Insurance Corporation's (the "FDIC") motion to Intervene, Stay Proceedings, and Extend Time for Filing Pleading in Intervention.  (Dkt. 36)

## PRELIMINARY STATEMENT

The court should deny the FDIC's motion.  First, the motion is contradictory on its face:  on the one hand, the FDIC says its intervention is warranted here now; on the other, it seeks an indefinite stay of this case (and to file a pleading under Fed. R. Civ. P. 24(c)) until it figures out if it wants to bring *any* claim.  Which is it?  Either way, Rule 24(a)(2) requires that an intervenor actually have "an interest" in the litigation before being permitted intervention.

Second, the FDIC premises its right to intervene on its assertion that plaintiffs allege only derivative claims for corporate mismanagement which it now "owns" as receiver for Haven Trust Bank (the "Bank").  However, that premise is false since plaintiffs allege direct securities law claims concerning the stock they were sold of the Bank's parent, Haven Trust Bancorp, Inc. ("Haven Trust").

Tellingly, while replete with references to plaintiffs' admittingly detailed allegations of defendants' malfeasance in operating the Bank (as is required by

Fed. R. Civ. P. 9(b), among other things), the FDIC's moving papers fail to even

mention the § 10(b) claim plaintiffs assert under the Private Securities Litigation

Reform Act of 1995 (the "PSLRA"), much less explain how the FDIC exclusively

"owns" -- or even conceivably *could* own -- that claim.  Also ignored are plaintiffs'

allegations of material omission in the private placement memoranda (the "PPMs")

for Haven Trust's March 2006 and March 2008 stock offerings; scienter, including

defendants' disregard of repeated warnings of operating deficiencies; artificial

inflation in Haven Trust's stock price; and even plaintiffs' express right to bring

their "blue sky" law claims under the Georgia Securities Act (the "GSA"),

including directly against defendants for rescission.  But any balanced analysis of

what claims actually are at issue here demonstrates clearly that the plaintiffs are the

proper parties to bring them.

Third, the FDIC's motion is untimely.  The FDIC has been investigating the

Bank's operations since well before January 2008, or over *33* months ago.  Further,

the FDIC was appointed receiver in December 2008; appeared in Haven Trust's

bankruptcy proceedings in April 2009; issued its comprehensive report concerning

the Bank in August 2009; subpoenaed certain of the defendants in September

2009; and, though again ignored entirely in its moving papers, did nothing in

2

response to the PSLRA notice, published *nationally* on January 4, 2010, summarizing the claims in this case.

Finally, the argument that plaintiffs would not be prejudiced if the FDIC takes over their claims is incorrect.  The FDIC itself has estimated that the Bank's failure will cost the FDIC's insurance fund over $200 million.  Thus, there likely are insufficient assets to pay the FDIC in full, much less other creditors such as the plaintiff shareholders who presumably stand last in line.  Taking over plaintiffs' claims to effectively quash them could hardly be more prejudicial.

## STATEMENT OF FACTS

### Founding and Operations of Haven Trust

Haven Trust was founded in 2000 by defendants Mukesh ("Mike") Patel and R.C. Patel.  (¶¶ 13, 14)[1]  While the FDIC makes much of the fact that Haven Trust was the holding company for the Bank and had no other business operations, this is neither novel nor uncommon among banks throughout the United States, nor does it mean that defendants' alleged malfeasance can be walled-off and confined to the Bank, as the FDIC suggests.

---

[1]   Paragraph references are to plaintiffs' operative amended complaint (Dkt. 23) filed May 17, 2010 (the "Amended Complaint").

To the contrary, *both* Haven Trust and the Bank were operated and controlled by defendants Mike Patel, R.C. Patel, Edward Briscoe, Scott Dix, Brij M. Kapoor, Mukund R. "Bobby" Patel, Narenda D. "Tony" Patel, Dhiru G. "Danny" Patel and Balvant Patel.  (¶¶ 13-23)  As directors of *both* Haven Trust and the Bank, defendants were responsible for the acts of *both* entities.  (¶¶ 23, 127-129)  Further, Mike Patel, who also served as Haven Trust's Chairman, his brother, R.C. Patel, and Haven Trust's President and CEO, Edward Briscoe, helped run the daily operations of *both* Haven Trust and the Bank.  (¶¶ 13-14) [2]

From its inception, Haven Trust appeared to grow at a rapid pace, from $29 million in assets in 2000, to approximately $575 million by 2008.  (¶ 35)  This rapid growth was fueled largely by non-core funding, including brokered deposits, which were used for risky ADC (acquisition, development and construction) and other types of CRE (commercial real estate) lending.  (¶¶ 38-44) [3]  This strategy

---

[2]     Defendants Mike and R.C. Patel also founded Haven Trust Bank Florida which, on September 24, 2010, also failed with the FDIC appointed as receiver. Mike and R.C. Patel, and defendants Mukund R. Patel, Narenda D. Patel and Dhiru G. "Danny" Patel, were also directors of Haven Trust Bank Florida.

[3]     Brokered deposits are certificates of deposits that divide investor cash in order to obtain FDIC insurance coverage. Although such deposits may boost liquidity, they pose profitability and other risks, as they often require higher

4

gave an outward *appearance* of Haven Trust's profitability.  However, Haven Trust was eventually exposed as a house of cards, built through reckless lending practices as well as a complete failure to heed repeated regulatory warnings of multiple deficiencies in the Bank's operations -- all concealed from plaintiffs and other investors they solicited.  (¶¶ 38-44)

To fund the Bank's growth, the defendants marketed and sold Haven Trust stock to plaintiffs and other investors at $25 per share via two PPMs.  Defendants drafted and approved both PPMs.  (¶¶ 22, 26, 60)  The first stock offering was March 31, 2006 (¶¶ 61-72), and the second offering was March 31, 2008.  (¶¶ 73-88)

### **The Collapse of Haven Trust**

On December 12, 2008, the Bank was closed by Georgia regulators, with the FDIC appointed as receiver.  (¶ 3, 56)  On February 23, 2009, Haven Trust, a Georgia corporation, filed for liquidation under Chapter 7 of the federal Bankruptcy Code.  (¶ 3)  *See In re Haven Trust Bancorp., Inc.*, No. 09-64497-mgd (Bankr. N.D. Ga.) ("*In re Haven Trust*").

---

interest rates and may be legally precluded by bank regulations if, as here, a bank falls short of being classified as "well capitalized."  (¶¶ 43-44)

On April 6, 2009, the FDIC filed a notice of appearance in *In re Haven Trust.*  By that time, the FDIC had long been investigating the Bank.  (¶ 45)

In August 2009, the FDIC's Office of Inspector General issued what it called an "Audit Report" entitled "Material Loss Review of Haven Trust Bank, Duluth, Georgia" (the "Audit Report").  (¶ 38)  The Audit Report stated that "[t]he key cause of failure of the institution was that its BOD [Board of Directors] did not adequately identify, measure, monitor, and control risk in its loan portfolio.  ... By and large, bank management ... failed to address examiner concerns or take appropriate steps to manage those risks."  (¶ 58)

On or about September 29, 2009, at least certain defendants received subpoenas from the FDIC as part of its continued investigation of the Bank, according to a motion filed by defendants' counsel in *In re Haven Trust.*  (Dkt. 21)

### **Plaintiffs Sue to Recover Their Damages**

On December 31, 2009, plaintiff Mukta Patel -- who lost over $100,000 investing in Haven Trust stock (¶ 9) -- filed her original complaint.  (Dkt. 1)  Plaintiff asserted claims exclusively under the Securities Act of 1933, the Securities Exchange Act of 1934 ("1934 Act"), the GSA and Georgia common law for fraud and negligence.  No claims were brought derivatively on behalf of Haven

Trust or the Bank, nor did plaintiff assert any breach of fiduciary duty, corporate waste or any other similar claim for corporate mismanagement, or seek relief for anyone other than herself and other similarly situated Haven Trust investors. Instead, plaintiff sought rescission and/or damages from defendants for selling her and other investors Haven Trust stock at artificially inflated prices.

On January 4, 2010, plaintiff (via her counsel) published notice (the "PSLRA notice") summarizing this case *and* identifying all defendants -- including those subpoenaed by the FDIC just three months earlier -- via *PR Newswire* in accordance with 15 U.S.C. § 78u-4(a)(3)(A)(i).  (Dkt. 13-2)  The notice specifically stated:

> "A client of the law firms of Gorby, Peters & Associates, P.C. and Berger & Montague, P.C. has filed a class action in the U.S. District Court for the Northern District of Georgia, Atlanta Division on behalf of all purchasers of Haven Trust Bancorp, Inc. ('Haven Trust' or the 'Company') securities between December 31, 2006 and December 12, 2008, inclusive (the 'Class Period'). Defendants are R.C. Patel, Mukesh C. Patel, Brig M. Kapool, Mukund R. Patel, Narenda D. Patel and Dhiru G. Patel, former directors of Haven Trust. ... A copy of the class action complaint can be viewed on Berger & Montague, P.C.'s website at www.bergermontague.com or may be requested from the Court:  the case is Mukta Patel v. R.C. Patel, et al., Case No. 1:09-CV-3684 (N.D. Ga.).

> Haven Trust was a bank holding company that owned
> and operated Haven Trust Bank located in Duluth,
> Georgia. The complaint alleges that former directors of
> Haven Trust violated the federal securities laws and
> Georgia state law by omitting to disclose to investors that
> its banking subsidiary engaged in certain improper
> banking practices which were identified by bank
> examiners prior to and during the Class Period. Due to
> significant deterioration of the bank's condition, among
> other things, the banking subsidiary, Haven Trust Bank,
> sought receivership with the FDIC on December 12,
> 2009 and the holding company, Haven Trust, filed for
> bankruptcy protection on February 23, 2009, damaging
> investors."

News of this case was reported nationally by major news organizations

within days of publication of the PSLRA notice. *See, e.g., Reuters* Jan. 4, 2010

(reprinting PSLRA notice); "Litigation wave may hit failed banks", *Atlanta*

*Business Chronicle*, Jan. 8, 2010, p. 3 (attached as <u>Exhibit A</u>).

Plaintiff's counsel received multiple inquiries in response to the PSLRA

notice, and additional plaintiffs sought to join this case. However, no inquiries

were received from the FDIC -- although, by this time, the FDIC had been

appointed receiver, appeared in *In re Haven Trust*, completed its Audit Report and

actually subpoenaed certain of the defendants.

On January 13, 2010, plaintiff's counsel filed a notice of appearance in *In re*

*Haven Trust*. (Dkt. 25)  That notice was publicly available.

8

On March 5, 2010, Mukta Patel, and additional plaintiffs Ashokh Parekh, Jitu Patel and Andrea and Phil Boswell, moved for lead plaintiff.   (Dkt. 13)

By order on March 18, 2010, the court appointed Mukta Patel as lead plaintiff.   (Dkt. 22)  The order also set May 17, 2010 as the deadline for plaintiffs' amended complaint; 60 days for defendants to respond; and 60 days for plaintiffs to file their opposition to any motion to dismiss.  The order also stayed further proceedings until the court ruled on the motion to dismiss.

On May 17, 2010, plaintiffs filed their Amended Complaint.  (Dkt. 23)  Like its predecessor, the Amended Complaint asserts only direct federal and state securities law claims under §§ 10(b) and 20 of the 1934 Act, the GSA and Georgia law for fraud and negligence.  No breach of fiduciary duty, corporate waste or other mismanagement claims were asserted, nor were any derivative claims brought, directly or indirectly, on behalf of Haven Trust or the Bank.  Instead, again like its predecessor, the Amended Complaint seeks rescission and/or damages from defendants -- as officers and/or directors of parent Haven Trust -- for selling Haven Trust stock via the PPMs at artificially inflated prices.

Plaintiffs' Amended Complaint alleges specific instances of defendants' misconduct impacting Haven Trust directly.  For example, plaintiffs' allege that,

9

although omitted from the PPMs, the undisclosed, then-existing truth was that

defendants ignored multiple warnings of operating deficiencies that had repeatedly

been identified by the FDIC and the Georgia Department of Banking and Finance.[4]

According to later admissions by its bankruptcy trustee, Haven Trust was

effectively insolvent by at least *January 2008 -- well before* the March 2008 PPM

and second sale of stock to plaintiffs and other investors.

On July 16, 2010, defendants moved to dismiss.  (Dkt. 26)  Defendants

argued, among other things, that Haven Trust's demise was caused by a downturn

in the real estate markets and the economy generally, not securities fraud; that

plaintiffs failed to adequately allege scienter; and that any omissions were

immaterial.  Notably, however, nowhere in their motion to dismiss did defendants

suggest that plaintiffs lacked standing to sue directly in their capacity as

shareholders of Haven Trust.

---

[4]    Defendants were repeatedly warned of alleged regulatory violations,
occurring between 2004 and 2008, related specifically to: *Part 365 of Appendix A
to Interagency Guidelines* (failure to report excessive loan-to-value ratios); *Section
323.5(b)(1) of FDIC Rules and Regulations* (appraisal independence); *Federal
Reserve Board Regulation O* (credit); *Part 364 of FDIC Rules and Regulations*
(unreasonable director compensation); *Part 337 of FDIC Rules and Regulations*
(improper brokered deposits); and *Federal Reserve Part 23A and Georgia Banking
Rules* (improper dividend payments). (¶¶ 47, 49(a) - (g))

10

On September 14, 2010, plaintiffs filed their opposition to defendants'
motion to dismiss.  (Dkt. 32)  On October 14, 2010, defendants' filed their reply
brief.  (Dkt. 40)  Briefing has closed (unless the court orders otherwise), and that
motion remains before the court.

On October 4, 2010 -- *years* after the FDIC began investigating, some *21*
months after it became receiver, *17* months after appearing in *In re Haven Trust,*
*10* months after the PSLRA notice was published and only *after* plaintiffs amended
their complaint and opposed defendants' motion to dismiss -- the FDIC belatedly
moved to intervene.  (Dkt. 36)  The FDIC's motion seeks to intervene not to
monitor and (had it actually filed a case) potentially even participate in these
proceedings by, for example, coordinating discovery with discovery in this case,
but instead to *both* take over the claims plaintiffs have asserted and --
contradictorily -- stay this case for some indeterminate period "in the near future"
(FDIC memo at 17) until it determines if it has any claim.

11

## ARGUMENT

### 1.    The FDIC Fails to Satisfy Rule 24(a)(2)

The Eleventh Circuit has held a proposed intervenor under Rule 24(a)(2) must establish:  "(1) [its] application to intervene is timely; (2) [it] has an interest relating to the property or transaction which is the subject of the action; (3) [it] is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) [its] interest is represented inadequately by the existing parties to the suit." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1999).  Where plaintiffs disagree is that the FDIC has failed to establish three of these four requirements.

### a)    The FDIC's Motion is Untimely

The FDIC's motion is untimely.  The Eleventh Circuit has held that timeliness under Rule 24(a)(2) depends on:  "(1) the period of time during which the putative intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the degree of prejudice to the existing parties as a result of the would-be intervenor's failure to move to intervene as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his position is denied; and (4) the

12

presence of unusual circumstances militating either for or against a determination that the application is timely." *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1365 (11th Cir. 1984).

First, the FDIC "reasonably should have known" about this litigation by *at least* January 4, 2010, when the PSLRA notice was published and national and local media reports described this case. Indeed, by that time, the FDIC had investigated for years, became receiver, completed its Audit Report, subpoenaed certain defendants and appeared in *In re Haven Trust*. Plaintiffs also filed their own appearance in *In re Haven Trust* just nine days after the PSLRA notice was published. In sum, even if the FDIC's claim (unverified by affidavit or otherwise) is credited in full that it "did not learn of th[is] case until on or about June 21, 2010, when its counsel ... listened to a webinar CLE" (FDIC memo at 8), the facts remain that the FDIC filed its motion nearly 10 months after this case was publicized nationally. [5]

---

[5]   The FDIC may argue that the PSLRA notice was aimed at Haven Trust investors. But because timeliness turns on *when* the FDIC reasonably should have known of this case, not *how*, this is a distinction without a difference. If, as the FDIC has belatedly asserted, its interests are so great here as to displace those of plaintiffs, it could have at least monitored the national media or PACER. In the case on which it principally relies, *Lubin v. Skow*, 2010 WL 2354141, at *1 (11th Cir. June 14, 2010), the FDIC moved to intervene six weeks after that case began.

Second, plaintiffs will be prejudiced if the FDIC's motion is granted.  The FDIC seeks to take over plaintiffs' claims not to assert them on behalf of the plaintiff investors, but instead to do so for itself and potentially other creditors -- and in circumstances where there appear to be limited assets.  If denied the right to prosecute their own direct claims, plaintiffs would effectively be denied any chance for relief at all.  Certain of the parties' legal and factual arguments have already been impacted to the potential prejudice of plaintiffs.[6]

By contrast, the FDIC will not be prejudiced if intervention is denied as it has not yet decided if it even has any claims.  *See, e.g.*, *Bumble Bee Foods, LLC v. Malo, Inc.*, No. CV 109-042, 2009 WL 2762683, at *3 (S.D. Ga. Aug. 31, 2009) ("the danger for prejudice against [plaintiff] coupled with the lack of prejudice for [the intervenor] weighs against a finding that [the] motion is timely.").  Even if the FDIC has claims, it may bring them in a separate lawsuit as this litigation alleges only direct claims and should not have any preclusive effect on the FDIC's potential derivative claims, as discussed below.  *Id*. ("With other appropriate

---

6      For example, while silent on standing in their original motion to dismiss (and, thus, unaddressed in plaintiffs' opposition), defendants' reply (Dkt. 40 at 15) jumps on the FDIC's tail by arguing (incorrectly as discussed below) that plaintiffs' "claim is actually based on alleged mismanagement of the Bank ...."

14

forums for [the intervenor] to bring her claims, she will not suffer prejudice from the denial of her motion.").

Finally, special circumstances also militate against a finding of timeliness. For example, if the FDIC's motion is granted, it is tough to imagine that shareholders of any failed bank would ever have a direct claim -- even for *fraud* and even if brought under federal and state securities laws -- which is the exact opposite of what the Eleventh Circuit held Congress intended, also as discussed below. Equally ominous, the FDIC's position would impermissibly stretch Rule 24 to permit intervention by any non-party with only a *potential* claim.

### b)   The FDIC Lacks an Interest in This Case

Rule 24(a)(2) requires that an intervenor have "an interest" in the action. However, the FDIC admits that it is only "presently investigating whether it should pursue claims" (FDIC memo at 16). This is insufficient to warrant intervention. *See, e.g., ManaSota-88, Inc. v. Tidwell,* 896 F.2d 1318, 1322 (11th Cir. 1990) (holding that the proposed intervenor's interest was "purely a matter of speculation at [the] time" of the motion, and thus insufficient to satisfy Rule 24(a)(2)); *U.S. v. Georgia,* Civ. No. 1:96-CV-700-JEC, 1996 WL 453543, at *5 (N.D. Ga. Apr. 9, 1996) ("the interests asserted by the Applicants are too speculative to satisfy"

15

Rule 24(a)(2)); *U.S. v. Peoples Benefit Life Ins. Co.,* 271 F.3d 411, 415 (2d Cir. 2001) ("An interest that is ... contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy" Rule 24(a)(2)).

The FDIC's argument that plaintiffs "actually" allege derivative claims is incorrect.  At the outset, plaintiffs agree that the FDIC has jurisdiction over failed depository institutions, that it succeeds to any and all claims that *the Bank* may have, and that "[w]here a shareholder alleges devaluation of shares due to corporate mismanagement ... [t]he shareholder's sole recourse is to bring a derivative action against the officers on behalf of the corporation." *Lubin,* 2010 WL 235414, at *2.  However, "[u]nder Georgia law, a direct claim is distinguishable from a derivative claim if the shareholder is 'injured in a way which is ... independent[ ] of the corporation.'" *Id. *3 (citing *Grace Bros. v. Farley Indus.*, 264 Ga. 817, 450 S.E.2d 814, 816 (Ga. 1994)).

Here, plaintiffs' claims are direct.  The Amended Complaint alleges claims exclusively under the 1934 Act, the GSA and Georgia law arising out of plaintiffs' purchases of Haven Trust stock via the PPMs at artificially inflated prices.  Hence, the gravamen of plaintiffs' claims is not defendants' mismanagement of the Bank, but defendants' marketing and selling of Haven Trust stock.  Indeed, claims for

16

corporate mismanagement are not even actionable under the federal securities

laws. *See, e.g.*, *In re Premiere Technologies Inc.*, No. 1:98-CV-1804-JOF, 2000

WL 33231639, at *14 (N.D. Ga. Dec. 8, 2000).

Fraud and non-fraud claims under federal and state securities laws like those

brought here have routinely been held to be direct claims. *See, e.g.*, *Musick, Peeler*

*& Garrett v. Employers Ins. of Wausau*, 508 U.S. 286, 296 (1993) (§ 10(b) claims

"impose direct liability on defendants for their own acts as opposed to derivative

liability for the acts of others"); *Medkser v. Feingold*, 307 Fed. Appx. 262, 265,

2008 WL 4797512, at *2 (11th Cir. Nov. 5, 2008) (plaintiffs' § 10(b) and state law

claims were "not an injury to the corporation, but to these investors, and the suit

may be brought as a direct action"); *Howard v. Haddad*, 916 F.2d 167, 171 (4th

Cir. 1990) (denying intervention because the FDIC did not own shareholder's

"direct, non-derivative" federal and state securities law claims against directors

since "such claims allege injuries arising out of the sale of the stock, and not out of

the causes for the diminution of the stock's value"); *Greenfield v. Shuck*, 867 F.

Supp. 62, 66-67 (D. Mass. 1994) (claims by failed bank's debtholders against

officers and directors asserted "direct, non-derivative claims" under § 10(b) and

state law; rejecting claim that the Resolution Trust Corporation, as receiver, owned

17

the claims).[7]  The FDIC does not even have the right to "prohibit shareholders

from 'proceeding against solvent third-parties in non-derivative shareholder

suits.'"  *Lubin*, 2010 WL 2354141, at *3 (citing *FDIC v. Jenkins*, 888 F.2d at

1545).

Further, *Lubin* also held that while the FDIC controlled the derivative claims

against the bank's former officers, it did not control claims against the holding

company's officers.  *Lubin,* 2010 WL 2354141, at *4, n. 9 ("Under FIRREA, the

FDIC succeeds to the rights of the Bank only.  Therefore, where the Trustee is

---

[7]     *See also Ledford v. Peoples*, 605 F.3d 871, 895, n. 65 (11th Cir. 2010)
("Section 10-5-12 [of the GSA] is 'Georgia's equivalent of Rule 10b-5. ...'"
(citation omitted); *Bogle v. Bragg*, 248 Ga.App. 632, 638, 548 S.E.2d 396 (2001)
(shareholder's Georgia law fraud claim was a direct claim); *Hall Family
Investments, L.P., McKesson Corp.*, 2007 WL 7126085 (Ga. Sup. Ct. Dec. 13,
2007) (applying Delaware law; holding that "if a plaintiff alleges that she, as an
individual investor, was misled or defrauded in the purchase of her investment, this
kind of claim is a 'direct' one"); *Tooley v. Donaldson, Lufkin & Jenrette Inc.*, 845
A.2d 1031, 1035 (Del. 2004) (holding that in order to determine whether a claim is
direct or derivative "a court should look to the nature of the wrong and to whom
the relief should go.").

The case on which the FDIC principally relies, *Lubin*, involved only claims
for breach of fiduciary duty and negligence; explicitly alleged corporate
mismanagement; and did not even involve any claims under the federal securities
laws or the GSA.  *See also FDIC v. Jenkins,* 888 F.2d 1537, 1545 (11th Cir. 1989)
(noting that the FDIC sought "a declaratory judgment that all of the shareholder's
claims, *except those based on state and federal securities law*, were derivative
actions, and thus were the property of the FDIC …") (emphasis added).

18

suing to vindicate the rights of the Holding Company against its own officers, FIRREA is not invoked.").  This accords with the text of 12 U.S.C. § 1821(d)(2)(A)(i), which provides that the FDIC succeeds only to "all rights ... of the insured depository institution, and any of the stockholder ... of such institution ...."  Here, plaintiffs assert their claims not as stockholders of the FDIC-insured failed Bank "institution," but instead of Haven Trust.

The FDIC also argues that it has an interest in preserving the directors and officers liability insurance policy -- despite not knowing yet if it has any claims.  But even if it had any such a claim, a purely economic, contingent interest alone is insufficient under Rule 24(a)(2).  *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005).  Denying intervention under both Rules 24(a) and (b), the court held that "a legally protectable interest 'is something more than an economic interest.' ... 'What is required is that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant.'"  *Id.* (original emphasis).[8]

---

8      *Mt. Hawley* also held that the intervenor's claimed interest was speculative since it assumed he would ultimately prevail against the parties covered by the policy.  *Id*.  Here, the FDIC's claimed interest in the insurance policy is even more speculative because the FDIC may *never* bring a claim.  *Accord Mid-Continent Cas. Co. v. Basdeo,* No. 08-61473-Civ, 2009 WL 2450386, at *3 (S.D. Fla. Aug. 7,

19

### c)   The FDIC's Interests are Not Impaired

The FDIC also argues that its ability to assert claims "*may be*" impaired by a "preclusive ruling in favor of the Defendants in this case." (FDIC memo at 13; emphasis added). However, this argument misses important legal and factual distinctions between the breach of fiduciary duty and other derivative claims that the FDIC may potentially assert, and the direct securities law claims plaintiffs actually assert. *See, e.g., Lubin*, 2010 WL 2354141, at *4 ("To state a claim for breach of fiduciary duty against officers of a Georgia corporation, the complaint must sufficiently plead: '(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach.'"); *Waterford Twp. Gen. Employees Ret. Sys. v. SunTrust Banks, Inc.*, No. 1:09-CV-617-TWT, 2010 WL 3368922, at *1 (N.D. Ga. Aug. 19, 2010) ( "In a typical § 10(b) private action, the plaintiff must show (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) loss causation.").

---

2009) ("In sum, a legally protectable interest is an interest that derives from a legal right, and the Eleventh Circuit has in no uncertain terms excluded from this definition 'purely economic' interests.").

As noted above, claims by the FDIC would center on alleged mismanagement of the Bank as opposed to claimed omissions in the PPMs for the stock of parent Haven Trust.  Further, the FDIC does not have to plead or prove fraud, the parties will not be the same, and the recoveries will not be shared.  Thus, the FDIC's concern of potential preclusive rulings is incorrect.  *See, e.g.*, *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986) ("In order for the doctrine of *res judicata* to bar a subsequent suit ... (3) the parties ... and (4) the same cause of action must be involved in both cases.").

At bottom, corporate malfeasance frequently gives rise to parallel direct and derivative cases.  Many bank failures have resulted in litigation -- both securities law class actions, and state law derivative claims alleging breaches of fiduciary duty and mismanagement -- where the FDIC appears to have never even contended, let alone successfully demonstrated, the extreme proposition it advances here that it alone "owns" all of the claims.[9]  Nor have plaintiffs found any

---

[9]     FDIC-insured bank failures such as Washington Mutual and IndyMac are just two recent examples. *See In re Washington Mutual Inc. Sec., Derivative & ERISA Litig.,* 694 F. Supp. 2d 1192 (W.D. Wash. 2009) (sustaining § 10(b) claims against former senior officers of subsidiary bank); *Daniels v. Perry, et al,* 2:08-cv-05073-GW-VBK (W.D. Cal. filed Aug. 1, 2008) (securities class action complaint by shareholders of parent of failed IndyMac Bank, F.S.B. against officers and directors; *FDIC v. Van Dellen, et al.*, No. 2:10-cv-04915-DSF-SH (C.D. Cal. filed

precedent indicating that the FDIC "owns" federal and state securities law claims asserted directly by shareholders of a failed bank holding company.[10]

### 2.    <u>The FDIC Fails to Satisfy Rule 24(b)(1)(B)</u>

The court should also deny permissive intervention.  Rule 24(b)(1)(B) requires that "(1) [the] application to intervene is timely; and (2) [the] claim or defense and the main action have a question of law or fact in common."  *Chiles*, 865 F.2d at 1213.  "The district court has the discretion to deny intervention even if both of those requirements are met, and its decision is reviewed for an abuse of discretion."  *Id*.  *See also* Fed. R. Civ. P. 24(b)(3) ("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.").

First, as noted above, the FDIC's motion is untimely.  Second, it is not clear at this juncture whether the FDIC has any claim, much less one that shares common questions of law or fact with those asserted by plaintiffs.  Third, plaintiffs

---

July 2, 2010) (complaint filed by the FDIC as receiver of IndyMac Bank, F.S.B. alleging breach of fiduciary duty and other claims against officers and directors).

10    In fact, the doctrine of *in pari delicto* may bar the FDIC from asserting at least certain such claims.  *See, e.g.*, *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985).

will clearly be prejudiced if the FDIC is permitted to usurp their claims, also as noted above.  Thus, the court should deny permissive intervention.[11]

### 3.    The Court Should Not Stay This Case

The FIDC asks the court to stay this case pending the FDIC's determination of whether it wants to bring any claims.  The Eleventh Circuit and other courts have rejected similar arguments.  *See, e.g., Jenkins*, 888 F.2d at 1538; *In re Southeast Banking*, 827 F. Supp. 742, 745 (S.D. Fla. 1993) ("the FDIC, as receiver of a failed bank … could not stay the prosecution or collection of, non-derivative claims brought by bank shareholders against former officers, directors and professionals").  Because plaintiffs have only alleged direct securities law claims, that same result should apply here.

In addition, the Eleventh Circuit has stated that the FDIC does not and should not have priority over shareholder lawsuits with respect to the assets of officers, directors and others that may be responsible for the failure of FDIC-

---

[11]    Plaintiffs have no objection to permitting the FDIC to receive all filings, and potentially even coordinating discovery if the FDIC decides to bring a related case (as is common where related securities and derivative actions have been filed).

23

insured banks.  *See, e.g.*, *Jenkins,* 888 F.2d at 1538, n.1.[12]  The fact that the FDIC

seeks a stay of indeterminate length also counsels against granting it.

## Conclusion

For the above reasons, the FDIC's motion to Intervene, Stay Proceedings,

and Extend Time for Filing Pleading in Intervention should be denied.

---

12      *Accord In re Southeast Banking Corp.*, 827 F.Supp. at 745-46 ("According
to U.S. Congressman Harley O. Staggers of West Virginia:  'Among the policy
reasons we cited for opposing this priority were that it would undermine bank
fraud enforcement efforts by discouraging private suits against wrongdoers,
penalize the innocent victims of fraud, lessen the incentive for the FDIC to pursue
its own actions promptly and vigorously, and be patently unfair to private litigants
who have spent the time and money to develop a case – only to see the FDIC step
in and assert a priority.'"); *In re Atlantic Fin. Fed. Sec. Litig.*, Civ. A. No. 89-0645,
1991 WL 98757, at *3 (E.D. Pa. May 29, 1991) ("Even the Third Circuit ... has
indicated that in nonderivative securities fraud suits, the FDIC should not be
entitled to priority."); *Howard v. Haddad*, 916 F.2d at 169-170 (rejecting FDIC's
contention that it has "absolute priority" over claims by shareholders "that seek to
recover from the same assets that the agency might look to"); *Hayes v. Gross*, 982,
F.2d 104, 109 (3rd Cir. 1992).

Dated:  October 18, 2010                    Respectfully submitted,


Lawrence J. Lederer, Esq.             /s/ Michel J. Gorby, Esq.
Robin Switzenbaum, Esq.               Michael J. Gorby, Esq.
Arthur Stock, Esq.                       (Ga. #301950)
Josh M. Rubens, Esq.                  Jeffrey D. Cooper, Esq.
*Admitted Pro Hac Vice*                  (Ga. # 478395)
BERGER & MONTAGUE, P.C.               GORBY, PETERS &
1622 Locust Street                       ASSOCIATES, P.C.
Philadelphia, PA  19103               Two Ravinia Drive, Suite 1500
Telephone:  (215) 875-3000            Atlanta, GA  30346-2104
Fax:  (215) 875-4604                  Telephone:  (404) 239-1150
llederer@bm.net                       Fax:  (404) 239-1179
rswitzenbaum@bm.net                   mgorby@gorbypeters.com
astock@bm.net                         jcooper@gorbypeters.com
jrubens@bm.net


*Counsel for Plaintiffs and the Proposed Class*


606880

# EXHIBIT A

Sign In / Register

Atlanta Business Chronicle - January 11, 2010
/atlanta/stories/2010/01/11/story2.html



Friday, January 8, 2010

# Litigation wave may hit failed banks

Atlanta Business Chronicle - by J. Scott Trubey Staff Writer

The nation's bank failures could soon lead to a wave of legal action against some officers and directors of some failed lenders. And Georgia, with its nation-leading tally of seized banks, could be ground zero.

Among the cratered financial companies bracing for potential lawsuits or civil claims is **Georgian Bank**, shut down last Sept. 25 at an estimated loss of $892 million, the third-largest lender in the state to fail in the current cycle.

In a Sept. 28, 2009, letter to **Chubb Group of Insurance Companies**, attorneys for Georgian notified the insurance carrier of potential claims that could be made against officers and directors by the **Federal Deposit Insurance Corp.** and shareholders.

The letter, known as a "notice of circumstances," is standard practice immediately before or after a failure, and is necessary to trigger coverage by a bank's directors and officers insurance before it expires.

The letter is not an admission of guilt, and it states that its inclusion of a description of circumstances that may give rise to a claim "is not intended and shall not be taken as any agreement or admission with respect to the regulators' criticisms."

But the letter does illuminate alleged practices that bank regulators apparently took umbrage with prior to the bank's failure. The letter also shows the steps banks are taking to protect themselves in the wake of a collapse.

Attorneys for Georgian Bank say the FDIC has not made any claims against directors or officers, nor have any lawsuits been filed.

Sources in the banking industry say the FDIC has sent "demands for civil damages" to directors and officers at some Georgia banks. The so-called "demand letters" are a possible precursor to legal action or claims against a liability insurance policy. The so-called demand letters are not public.

"The FDIC has a job to do in connection with every bank failure and part of that is to explore claims against insiders who might have played a part in a bank's failure," said Mark Kanaly, banking attorney with **Alston & Bird** LLP.

The seven-page Sept. 28 letter, obtained by **Atlanta Business Chronicle**, is largely a recitation by Georgian's lawyers of an FDIC cease-and-desist order made public against the bank on the day it failed.

In the cease-and-desist order, regulators cited Georgian for operating with a board that failed to provide proper oversight, management whose policies and practices were detrimental to the bank and the safety of deposits, inadequate capital reserves given its asset quality, its volume of souring loans, inadequate allowance for loan and lease losses, lax lending practices, inadequate funds management and other alleged shortcomings.

But the Sept. 28 letter goes into further detail about potential claims that the FDIC — and shareholders — might make against the bank's former directors and officers if a case can be made for alleged negligence and wrongdoing.

The letter also details regulators' assertions of "unsafe and unsound banking practices and wrongful acts," among them, an overindulgence in commercial and residential real estate acquisition and development loans, violations of legal lending limits to several Atlanta developers, lending out of territory and appraisal deficiencies that included the use of a former CEO's son's firm for a "large portion" of the bank's appraisals.

John Douglas, an attorney with **Davis Polk & Wardwell** LLP in New York, who represents Georgian's board, said the letter should not be considered an admission of guilt, but is a standard practice to notify an insurer of possible claims following a failure.

Such letters have likely been filed with insurers by all 30 banks that have failed in Georgia since August 2008, according to industry experts.

Douglas said regulators have not filed a lawsuit against Georgian Bank or any former or current officers or directors, nor have they indicated an intent to do so.

Michael Cochran, an attorney with **McKenna Long & Aldridge** LLP in Atlanta who represents former Georgian Bank CEO Gordon Teel, declined to comment about the Sept. 28 letter or make his client available for an interview. He also said no lawsuits have been filed nor any claim letters sent by regulators.

When a bank fails, the FDIC becomes the primary shareholder of the organization, and retains the right to sue directors and officers for "gross negligence" that may have contributed to the failure, under directors and officers liability insurance, known informally as "D&O"

insurance.

The insurance protects officers and directors from personal liability, and is often one of the few remaining assets when a bank is seized. Claims can range in size from hundreds of thousands of dollars into the millions, depending on the size of the policy and the number of bank representatives involved in the claim.

It is not clear how much D&O coverage Georgian had, but industry insiders estimate the figure was likely around $5 million to $10 million given the bank's asset size (around $2 billion).

Georgian's rise was fed by metro Atlanta's explosive job growth, which fueled the city's population surge, and drove demand in a housing industry.

But when the housing market started to unravel in 2007, and oversupply ran rampant, many borrowers — including some high-profile developers — simply couldn't continue to pay. And ultimately the capital base that Georgian was built on eroded.

Signs of stress in Georgian's loan portfolio started to show in late 2007, following the collapse of the housing market.

Tony Plath, a former bank executive and current finance professor at the **University of North Carolina-Charlotte**, said the cease-and-desist order and Sept. 28 letter indicates regulators made serious allegations about practices that may have contributed to Georgian Bank's failure.

"If those allegations are well founded and established by the FDIC, then I think the shareholders have a case for fiduciary negligence," Plath said.

According to the Sept. 28 letter, at the end of 2008, residential development loans comprised the majority of Georgian's portfolio, and 525 percent of its Tier 1 capital. The bank operated on a strategy of a small quantity of big loans for big projects. Several of Georgian's borrowers — including Wayne Mason ($54.3 million in 12 loans), J. David Chatham ($58.5 million in 10 loans), Phillip E. Corley ($49 million in eight loans), Todd Hager ($48.2 million in seven loans) and Pete and Warren Jolly ($54.1 million in three loans) — had loans that were in apparent violation of the state's lending limit provisions, according to the letter to Georgian's insurer.

"Large concentrations, that isn't a judgment call, that's an empirical mistake," Plath said. "The risk-taking structure that supports the bank was inadequate."

Non-accrual loans at Georgian skyrocketed twelvefold from $24 million in the first quarter of 2009, to $306 million by June 30, 2009, according to an analysis of FDIC data by **FIG Partners** LLC.

Regulators criticized the bank for allegedly inadequate appraisals used in loan underwriting and for renewing development loans without updated valuations of the collateral.

Regulators also criticized the bank for the use of **Teel Appraisals & Advisory Inc.,** a company owned by Teel's son, which apparently performed a "large portion" of the bank's appraisals.

A proxy filed Nov. 22, 2004, with the Securities and Exchange Commission prior to the company changing from publicly to privately held shows that Teel's son's company was paid $324,000 for appraisal services, or about 90 percent of the total paid during the first nine months of that year for appraisals.

The filing stated that pricing of services and terms were comparable to other third-party vendors. The filing was the bank's final proxy before reverting to a privately held bank.

Other issues at the bank cited by regulators, according to the Sept. 28 letter, include lending to large residential developments in Daytona Beach and Panama City, Fla., and allegedly "lax lending terms" — including not following bank policies of requiring 10 percent borrower equity on certain loans.

The FDIC also alleged, according to the letter, that Georgian's financial statements and call reports were incorrect and that earnings may have been overstated because of inaccurate financial statements.

The FDIC does not discuss potential litigation against failed banks, but an agency spokesman said the regulator "has not filed any D&O lawsuits in connection with bank failures since the crisis began in 2008."

Regulators have a three-year window to file civil complaints.

The FDIC may soon begin pushing to help replenish its deposit insurance fund. The fund protects all U.S. depositors, guaranteeing up to $250,000 in deposits will be repaid in the event of a bank failure.

But the fund has been strained by 140 bank failures that have cost the fund about $36 billion during the past year.

Twenty-five failures occurred in Georgia in 2009, the highest level in the nation. Regulators have twice taken extraordinary steps to prevent the fund from drifting into insolvency.

The directors and officers of failed banks also could face lawsuits from shareholders. In fact, it's already happening.

On Dec. 31, Mukta Patel, a shareholder of **Haven Trust Bancorp** Inc. filed a lawsuit seeking class-action status in federal court in Atlanta alleging the board of Haven Trust Bank was deficient in its duties.

Patel bought 4,000 shares of stock in Haven Trust on Sept. 23, 2008, for $100,000, and the bank failed less than two months later.

In the suit, Patel also alleges that the directors did not disclose pertinent information about the souring condition of the bank at the time the stock was purchased. The class period extends from Dec. 31, 2006, until Dec. 12, 2008, the day the bank closed.

An FDIC audit of the December failure of Haven Trust Bank faulted lax bank management, a superheated commercial real estate portfolio, too heavy a reliance on wholesale deposits and ineffective government oversight as the root cause of the bank's collapse, regulators said in a report issued Aug. 10, 2009.

Duluth-based Haven Trust, which was founded by prominent members of the Asian-American hotel community, and specialized in loans to Indian businesses in the hospitality and real estate sector, experienced rapid loan growth and an even faster deterioration of its commercial real estate portfolio, according to an audit by the Office of the Inspector General of the Federal Deposit Insurance Corp.

Its burgeoning portfolio, coupled with a failure by management to properly manage risk, inadequate loan underwriting and a slow response by federal regulators contributed to the failure, which cost the Deposit Insurance Fund $207 million, the audit said.

Board members and bank insiders raised several million dollars to shore up the bank's losses in the weeks before the failure.

*Reach Trubey at strubey@bizjournals.com*

*All contents of this site © American City Business Journals Inc. All rights reserved.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MUKTA PATEL, ASHOK PAREKH, | : | |
| JITU PATEL, and ANDREA and PHIL | : | |
| BOSWELL, on Behalf of Themselves | : | |
| And All Others Similarly Situated, | : | |
| Plaintiffs, | : | |
| | : | Case No.: 09-CV-3684-CAP |
| v. | : | |
| | : | CLASS ACTION |
| MUKESH C. PATEL, R.C. PATEL, | : | |
| EDWARD L. BRISCOE, SCOTT DIX, | : | DEMAND FOR JURY TRIAL |
| BRIJ M. KAPOOR, MUKUND R. | : | |
| PATEL, NARENDA D. PATEL, | : | |
| DHIRU G. PATEL, and BALVANT | : | |
| PATEL, | : | |
| Defendants. | : | |

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 7.1(D) of the Local Rules of the Northern District of Georgia, the undersigned counsel for the Lead Plaintiff hereby certifies that the foregoing document was prepared in a font and point selection approved by this court and authorized in Local Rules 5.1(C).

Dated:  October 18, 2010                Respectfully submitted,


Lawrence J. Lederer, Esq.             /s/ Michel J. Gorby, Esq.
Robin Switzenbaum, Esq.               Michael J. Gorby, Esq.
Arthur Stock, Esq.                       (Ga. #301950)
Josh M. Rubens, Esq.                  Jeffrey D. Cooper, Esq.
*Admitted Pro Hac Vice*                  (Ga. # 478395)
BERGER & MONTAGUE, P.C.               GORBY, PETERS &
1622 Locust Street                       ASSOCIATES, P.C.
Philadelphia, PA  19103               Two Ravinia Drive, Suite 1500
Telephone:  (215) 875-3000            Atlanta, GA  30346-2104
Fax:  (215) 875-4604                  Telephone:  (404) 239-1150
llederer@bm.net                       Fax:  (404) 239-1179
rswitzenbaum@bm.net                   mgorby@gorbypeters.com
astock@bm.net                         jcooper@gorbypeters.com
jrubens@bm.net

*Counsel for Plaintiffs and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MUKTA PATEL, ASHOK PAREKH, | : | |
| JITU PATEL, and ANDREA and PHIL | : | |
| BOSWELL, on Behalf of Themselves | : | |
| And All Others Similarly Situated, | : | |
| Plaintiffs, | : | |
| | : | Case No.: 09-CV-3684-CAP |
| v. | : | |
| | : | CLASS ACTION |
| MUKESH C. PATEL, R.C. PATEL, | : | |
| EDWARD L. BRISCOE, SCOTT DIX, | : | DEMAND FOR JURY TRIAL |
| BRIJ M. KAPOOR, MUKUND R. | : | |
| PATEL, NARENDA D. PATEL, | : | |
| DHIRU G. PATEL, and BALVANT | : | |
| PATEL, | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for all parties in the foregoing matter with a copy of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss by filing same with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification and allow electronic access to the filing to the following counsel of record:

THOMAS KENNEDY SAMPSON & TOMPKINS LLP
Thomas G. Sampson (Ga. # 623600)
Jeffrey E. Tompkins (Ga. # 714608)
Shukura L. Ingram (Ga. # 383498)
3355 Main Street
Atlanta, GA 30337
Tel: (404) 688-4503
Fax: (404) 761-3406

*Counsel for the FDIC, as*
*Receiver for Haven Trust Bank*

ALSTON & BIRD LLP
Theodore J. Sawicki (Ga. # 627851)
Robert R. Long (Ga. # 141546)
Kerry K. Vatzakas (Ga. # 141347)
1201 West Peachtree Street
Atlanta, Georgia  30309
Tel:  (404) 881-7000
Fax:  (404) 881-7777

*Counsel for Defendants*

Dated:  October 18, 2010

Respectfully submitted,

Lawrence J. Lederer, Esq.
Robin Switzenbaum, Esq.
Arthur Stock, Esq.
Josh M. Rubens, Esq.
*Admitted Pro Hac Vice*
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone:  (215) 875-3000
Fax:  (215) 875-4604
llederer@bm.net
rswitzenbaum@bm.net
astock@bm.net
jrubens@bm.net

/s/ Michel J. Gorby, Esq.
Michael J. Gorby, Esq.
  (Ga. #301950)
Jeffrey D. Cooper, Esq.
  (Ga. # 478395)
GORBY, PETERS & ASSOCIATES, P.C.
Two Ravinia Drive, Suite 1500
Atlanta, GA  30346-2104
Telephone:  (404) 239-1150
Fax:  (404) 239-1179
mgorby@gorbypeters.com
jcooper@gorbypeters.com

*Counsel for Plaintiffs and the Proposed Class*

2