## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MUKTA PATEL, ASHOK PAREKAH,   :
JITU PATEL, and ANDREA and PHIL   :
BOSWELL, on Behalf of Themselves   :
And All Others Similarly Situated,   :
  :
        Plaintiffs,   :    CIVIL ACTION FILE
  :
v.   :    NO. 1:09-CV-3684-CAP
  :
MUKESH C. PATEL, R.C. PATEL,   :
EDWARD J. BRISCOE, SCOTT DIX,   :
BRIJ M. KAPOOR, MUKUND R.   :
PATEL, NARENDA D. PATES,   :
DHIRU G. PATEL, and BALVANT   :
PATEL,   :
  :
        Defendants.

---

### REPLY TO PLAINTIFFS' AND DEFENDANTS' RESPONSES IN OPPOSITION TO FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF HAVEN TRUST BANK'S MOTION TO INTERVENE, STAY PROCEEDINGS, AND EXTEND TIME FOR FILING PLEADING IN INTERVENTION

---

The Federal Deposit Insurance Corporation ("FDIC") in its capacity as

receiver of Haven Trust Bank ("FDIC-R"), submits this Reply to the Plaintiffs'

and Defendants' Responses in Opposition to the FDIC-R's Motion to Intervene,

Stay Proceedings, and Extend the Time for Filing a Pleading in Intervention.

## INTRODUCTION

On October 4, 2010, the FDIC-R, as receiver for Haven Trust Bank (the "Bank"), moved to intervene in this case. (Doc. 36). The thrust of the FDIC-R's Motion is that the claims asserted by the Plaintiffs are derivative claims of corporate mismanagement disguised as claims for securities fraud under state and federal law, and belong to the FDIC-R by operation of federal law. On October 18, 2010, Plaintiffs and Defendants filed their respective responses in opposition to the FDIC-R's Motion. (Doc. 43 and 44). Plaintiffs dispute that the claims asserted are derivative in nature and raise several arguments as to why they believe intervention is improper. Defendants agree with the FDIC-R that Plaintiffs' claims are nothing more than claims of corporate mismanagement, but nevertheless contend that intervention is improper. The FDIC-R responds to certain issues raised by Plaintiffs and Defendants as follows.

## LAW & ARGUMENT

### 1.   The FDIC-R's Motion is timely.

As previously explained, a motion for intervention, whether brought under Fed. R. Civ. P. 24(a) or (b), must be timely. *Chiles v. Thornburg*, 865 F.2d 1197, 1213 (11th Cir. 1989). The FDIC-R and Plaintiffs are in agreement as to the factors the Court must consider in determining whether the FDIC-R's Motion is timely. (*Compare* FDIC-R Memorandum (Doc. 36-1), p. 7 *with* Plaintiffs'

Memorandum (Doc. 44), p. 13).  However, Plaintiffs' application of those factors is misplaced.

For instance, Plaintiffs strongly argue that the FDIC-R's Motion is untimely because it was filed nearly 10 months after notice of this lawsuit was publicized in the Plaintiffs' Private Securities Litigation Reform Act Notice.[1]  Assuming *arguendo*, as Plaintiffs suggest, that the FDIC-R should have known of the PSLRA notice, or that it should have known of this case through general monitoring of national media and PACER records, the fact remains that a period of 10 months since inception of this case does not render the FDIC-R's Motion untimely.  In *Chiles,* which involved a case in a comparable state of progression, the Eleventh Circuit found that a delay of seven months was not untimely. *Chiles,* 865 F.2d at 1213.  In reaching this conclusion, the Eleventh Circuit relied upon a Fifth Circuit decision finding a motion for intervention to be timely even when filed approximately one year after the case was commenced.  *Id.* (citing *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir. 1970).  When the progression of this case is compared with that in cases where intervention was

---

[1] As discussed in the FDIC-R's prior submissions, it was not aware of this lawsuit until its counsel heard mention of the same during a telephonic CLE seminar. (Declaration of William L. Martin III, attached hereto as Exhibit A).

allowed seven to 12 months after the filing of the complaint, it cannot be said that the 10 month delay here renders the FDIC-R's request untimely.

Plaintiffs also contend that the FDIC-R's Motion should be found untimely because Plaintiffs will be prejudiced if the FDIC-R is allowed to take control of Plaintiff's claims.[2] This argument is a misapplication of the law. For purposes of the timeliness inquiry, the relevant prejudice is that caused by the delay in seeking intervention, not any other form of prejudice. *See Chiles,* 865 F.2d at 1213 (noting the second timeliness factor to be "the extent of prejudice to the existing parties as a result of the [movant's] failure to move for intervention as soon as [it] knew or reasonably should have known of [its] interest"). Even if the FDIC-R could have moved earlier than it did in this instance, the delay preceding the Motion has not resulted in any prejudice. As previously discussed, no discovery has been taken to date, and the case is subject to an order staying proceedings. *Cf. Chiles*, 865 F.2d at 1213 (motion timely where filed seven months after initial complaint, three

---

[2] Plaintiffs also suggest at footnote 6 of their Memorandum that they have been prejudiced by mismanagement arguments Defendants allegedly adopted from the FDIC-R and raised in their Reply in support of their motion to dismiss (Doc. 40). Plaintiffs erroneously contend that these arguments were not raised in Defendants' original motion, and that Plaintiffs have been precluded from responding to the same. Defendants repeatedly asserted in their Memorandum in Support of their Motion to Dismiss that Plaintiffs' claims amounted to nothing more than claims of mismanagement. (Doc. 27-1, pp. 24, 30, 33).

months after motion to dismiss, and prior to commencement of discovery).  For

these reasons, and as previously discussed, the FDIC-R's Motion is timely.

### 2.   Intervention under Fed. R. Civ. P. 24(a)(2) is appropriate.

### (i)   The FDIC has an interest in this case because the Plaintiffs' claims arise out of harm to an insured banking institution.

As previously stated, whether an action is derivative or direct depends upon

the nature of the harm alleged, not the labels assigned in a complaint. *Lubin v.*

*Skow*, 2009 WL 4641761 *5 (N.D. Ga. Nov. 30, 2009) (Story, J.), *affirmed, Lubin,*

2010 WL 2354141 at *3 (citing *Phoenix Airline Servs., Inc. v. Metro Airlines, Inc.,*

397 S.E.2d 699, 701, for the position that "[i]t is the nature of the wrong alleged

and not the pleader's designation or stated intention that controls the court's

decision."); *In re Sunrise Securities Litigation*, 916 F.2d at 882 ("Whether a claim

is individual or derivative is determined from the body of the complaint rather

than from the label employed by the parties.").  A shareholder's claim is direct if

the shareholder is injured in a way that is different from the other shareholders or

independent of the corporation. *Grace Bros., Ltd. v. Farley Indus., Inc.*, 450

S.E.2d 814, 819 (Ga. 1994).  In other words, the claim is not direct unless the

shareholder can prevail without showing an injury or breach of duty to the

corporation. *Paul and Suzie Schutt Irrevocable Family Trust v. NAC Holding,*

*Inc.*, 642 S.E.2d 872, 835 (Ga. Ct. App. 2007) (applying Delaware law and

concluding that fraud claims incorporating allegations of mismanagement were direct claims).[3]

No one disputes that the Plaintiffs have labeled their claims as securities fraud under federal and state law.  Moreover, the FDIC does not dispute that securities fraud claims premised upon losses unrelated to allegations of mismanagement of a corporation may be brought as a direct action.  Plaintiffs' claims are not such claims.  Although Plaintiffs assert in cursory fashion that the stock they purchased was overpriced, the harm Plaintiffs claim to have suffered is the loss of their investments, which Plaintiffs contend occurred when the FDIC-R was appointed as receiver for the Bank.  (Amended Complaint, Section VI, "Loss Causation", ¶ 89).  The receivership, Plaintiffs contend, was brought about by the Defendants' mismanagement and harm to the Bank.  Thus, the losses Plaintiffs allegedly suffered flowed from injury to the Bank, not from any injury to Plaintiffs themselves.  Moreover, the losses due to the Bank's failure were suffered by all investors alike.

---

[3] The case of *Hall Family Investments, L.P. v. McKesson Corp.*, 2007 WL 7126085, *8 (Fulton County State Court Dec. 13, 2007), cited by the Plaintiffs, acknowledges that Georgia law and Delaware law are in accord on the issue of what constitutes a derivative claim.

Plaintiffs losses are analogous to those considered by the Third Circuit in *In re Sunrise Securities Litigation*, 916 F.2d 874 (3rd Cir. 1990). There, plaintiffs asserted RICO claims premised upon failure to disclose mismanagement of a financial institution's affairs. In essence, the plaintiffs alleged that they would not have invested their deposits with the financial institution had they known of the institution's true financial condition and acts of mismanagement similar to those alleged in this case. *See generally, In re Sunrise Securities Litigation*, 916 F.2d at 882-883. The Third Circuit rejected the plaintiffs' argument that their claims were direct in nature. *Id.* at 883-884. As the court succinctly stated, "[the] fraud claim is premised on conduct that injured the institutions, and plaintiffs' losses are incidental to and flow from that injury." *Id.* at 884.

The FDIC-R has found no controlling cases that dictate a result different than that reached in *In re Sunrise Securities Litigation*, and no such cases have been cited by Plaintiffs or Defendants. Plaintiffs cite one Eleventh Circuit case, *Medkser v. Feingold*, 2008 WL 4797512 (11th Cir. Nov. 5, 2008), for the proposition that securities fraud claims are direct in nature. That case was decided under Florida law and, from the face of the opinion, does not appear to have involved allegations of losses flowing from mismanagement as alleged here.

Similarly, the Georgia state court cases cited by Plaintiffs are distinguishable. In *Hall Family Investments, L.P. v. McKesson Corp.*, 2007 WL

7126085, a state trial court decision in which the plaintiffs' fraud claims were found to be direct as opposed to derivative, the court expressly distinguished the plaintiffs' case from the holding in *Paul and Suzie Schutt Irrevocable Family Trust v. NAC Holding, Inc.*, 642 S.E.2d 872 (Ga. Ct. App. 2007), a case involving allegations of mismanagement. More specifically, in *Schutt*, the Georgia Court of Appeals held that fraud claims incorporating claims of mismanagement resulting in harm to all shareholders alike were derivative in nature. *Id.* at 835. As discussed herein, Plaintiffs allege that their losses occurred when the Bank was placed in receivership, an event which caused harm to all shareholders alike.

Plaintiffs also cite the Georgia decision of *Bogle v. Bragg*, 548 S.E.2d 396 (2001). (Plaintiffs' Memorandum (Doc. 44), p. 18, n. 7). Plaintiffs appear to contend that this decision stands for the notion that a fraud claim is direct in nature. There is no such holding in *Bogle*. *Bogle* held that a claim of mismanagement is a derivative claim. *Bogle* 548 S.E.2d at 402. Although the court also considered a securities fraud claim, it did not address whether such claim was derivative or direct, and there is no indication that the issue was even raised by the parties to that case. *See, id.*

Because Plaintiffs' claims depend upon establishing harm to the Bank, and because Plaintiffs' losses flow from losses suffered by the Bank and its other

shareholders alike, Plaintiffs' claims are derivative in nature and belong to the FDIC-R.

### (ii)  The FDIC-R's interest is not affected by the fact that Plaintiffs held stock in the Bank's holding company.

Defendants contend that the FDIC-R has no interest in the Plaintiffs' claims because those claims are asserted in Plaintiffs' capacity as shareholders of the Bank's holding company, Haven Trust Bancorp (the "Holding Company") (Defendants' Memorandum (Doc. 43), pp. 2-3).  Defendants are correct to point out that the Eleventh Circuit has held that the FDIC-R does not succeed to rights of a bank's holding company to pursue derivative claims against the holding company's officers and directors. *See Lubin*, 2010 WL 2354141, *4, n. 9. However, that distinction does not apply in this case.

Plaintiffs are shareholders in the Holding Company.  Plaintiffs allege that the Holding Company had no assets other than the Bank and no employees other than the Bank's employees. (Amended Complaint, ¶ 33).  Plaintiffs further allege that the Holding Company and the Bank shared common directors. (*Id.*, ¶ 23). Indeed, all but one of the Defendants, Scott Dix, are alleged to have been officers and/or directors of both the Bank and the Holding Company. (*Id.*, ¶¶ 13-21).  The shotgun style of the Amended Complaint, coupled with the fact that Plaintiffs appear to have referred to the Bank and the Holding Company interchangeably

throughout the same, renders it virtually impossible to determine which acts, if any, Defendants are alleged to have undertaken in their respective capacities as representatives of the Holding Company versus their capacities as representatives of the Bank. However, what is clear is that the Plaintiffs' loss of their investment is founded upon failure of the Bank, which in turn was caused by the mismanagement of the Defendants in their capacity as officers and directors of the Bank. In other words, Defendants' conduct caused no direct harm to the Holding Company; rather, that harm was an indirect result of their actions with respect to the Bank.[4] Claims founded upon harm to the Holding Company alleged to have been caused by representatives of the Bank, and which are inseparable from, or derivative of, the harm caused to that insured institution, belong to the FDIC-R. *Lubin*, 2010 WL 2354141, *4; *see also In re Southeastern Banking Corp.*, 827 F.Supp. 742, 746 (S.D. Fla. 1993) ("There is no meaningful distinction between injury suffered by the holding company and the derivative claims of mismanagement, especially where [the holding company's] solvency and success

---

[4] Plaintiffs suggest at pages 9-10 of their Memorandum (Doc. 44) that they have alleged specific instances of Defendants' conduct impacting the Holding Company directly. However, in support of this position, Plaintiffs cite nothing other than conduct of mismanagement at the Bank level.

were 'crucially dependent' on the Bank, as alleged in the Complaint...."), *rev'd in part on other grounds,* 69 F.3d 1539 (11th Cir. 1995).

### (iii)   The FDIC's interest is not speculative.

Plaintiffs repeatedly criticize the FDIC-R's position on the basis that the FDIC-R was still investigating its potential claims against various Defendants at the time it moved to intervene. The FDIC-R has now completed its investigation and has received authority to file suit. Thus, the pendency of the FDIC-R's investigation is no longer a basis for finding its interests to be speculative in nature.

### 3.   Even if intervention is not appropriate under Fed. R. Civ. P. 24(a)(2), permissive intervention is appropriate under Fed. R. Civ. P. 24(b)(1)(B).

Evaluating permissive intervention requires the Court to consider (1) the timeliness of a request for intervention, and (2) whether the moving party's claim or defense and the main action have a question of law or fact in common. *Chiles,* 865 F.2d at 1213. As has been discussed at length, the FDIC-R's Motion is timely. Further, as mentioned above, the FDIC-R now has authority to pursue legal action against those responsible for the mismanagement of the Bank. Undoubtedly, those claims will be based upon the results of the FDIC-R's investigation of the Bank's failure, including those findings referenced in the Material Loss Review Audit Report prepared by the FDIC's Office of Inspector

General.  That report is the foundation of all of Plaintiffs' claims of mismanagement, and Plaintiffs will have to prove that mismanagement in order to sustain any claims against Defendants.  Defendants are likely to contest any allegations of mismanagement, whether asserted by the FDIC-R or the Plaintiffs.  Thus, it is difficult to conceive of how the questions of law and fact raised in the course of this litigation will not share commonalities with the FDIC-R's claims of mismanagement.  Accordingly, permissive intervention is appropriate in this case.

## CONCLUSION

In light of the foregoing, the FDIC-R requests that the Court enter an order (1) allowing the FDIC-R to intervene as a matter of right, or pursuant to the Court's discretion; and (2) continuing the present stay of proceedings in this matter and extending the FDIC-R's time for filing a pleading in intervention until such time as the FDIC-R can prepare its complaint against those responsible for the Bank's failure.

## <u>CERTIFICATION PURSUANT TO L.R. 7.1D</u>

Pursuant to LR 7.1D, this certifies that this document was prepared using the New Times Roman font in 14 point. These font and point selections are approved by LR5.1C.

Respectfully submitted,

THOMAS KENNEDY SAMPSON & TOMPKINS LLP


/s/ Jeffrey E. Tompkins
THOMAS G. SAMPSON
Georgia Bar No. 623600
JEFFREY E. TOMPKINS
Georgia Bar No.  714608
SHUKURA L. INGRAM
Georgia Bar No.  383498
3355 Main Street
Atlanta, GA 30337
Tel: (404) 688-4503
Fax: (404) 761-3406

and

/s/ Robert E. Craddock, Jr.
Robert E. Craddock, Jr.
Tennessee Bar No. 5826
WYATT TARRANT & COMBS, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, TN  38120
(901) 537-1000
(901) 537-1010

Attorneys for the Federal Deposit Insurance Corporation,
as Receiver for Haven Trust Bank

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MUKTA PATEL, ASHOK PAREKAH,  :
JITU PATEL, and ANDREA and PHIL  :
BOSWELL, on Behalf of Themselves  :
And All Others Similarly Situated,  :
                                 :
        Plaintiffs,        :     CIVIL ACTION FILE
                                 :
v.                            :     NO. 1:09-CV-3684-CAP
                                 :
MUKESH C. PATEL, R.C. PATEL,  :
EDWARD J. BRISCOE, SCOTT DIX,  :
BRIJ M. KAPOOR, MUKUND R.  :
PATEL, NARENDA D. PATES,  :
DHIRU G. PATEL, and BALVANT  :
PATEL,  :
        Defendants.

### CERTIFICATE OF SERVICE

I hereby certify that on this date a true and exact copy of the foregoing was electronically filed with the Clerk of the Court  using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

This 1st day of November, 2010.

                      /s/ Jeffrey E. Tompkins
                      Jeffrey E. Tompkins
                      Georgia Bar No. 714608

653379.1