UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MUKTA PATEL, ASHOK PAREKH,
JITU PATEL, and ANDREA
BOSWELL, and PHIL BOSWELL, on
behalf of themselves and all
others similarly situated,

      Plaintiffs,

      v.

MUKESH C. PATEL, R.C. PATEL,
EDWARD L. BRISCOE, SCOTT DIX,
BRIJ M. KAPOOR, MUKUND R.
PATEL, NARENDA D. PATEL, DHIRU
G. PATEL, and BALVANT PATEL,

      Defendants.

CIVIL ACTION

NO. 1:09-CV-3684-CAP

**O R D E R**

This matter is before the court on the defendants' motion to
dismiss the plaintiffs' amended complaint [Doc. No. 27].

**I.   Factual Background**

Horizon BanCorp was founded in 2000 by the defendants Mukesh
Patel and R.C. Patel; the company's name was changed in 2005 to
Haven Trust Bancorp, Inc. [Doc. No. 23, ¶¶ 13, 14].  The company
was organized as a holding company for Haven Trust Bank and had no
business operations other than the Bank, its sole and wholly-owned
subsidiary [Id. at ¶ 33].  The Bank was a Georgia state-chartered
bank headquartered in Duluth, Georgia; the Bank operated four
branches in Atlanta and had loan production officers in Alabama and
Oklahoma.  The company was a vehicle to obtain cash for the Bank by

selling the company's common stock to investors, including the plaintiffs here. Haven Trust and the Bank were operated and controlled by the defendants [Id. at ¶¶ 13-23]. As directors of both the company and the Bank, the defendants were responsible for and controlled the operations of both entities [Id. at ¶¶ 23, 127-129]. In addition, as the founders, the defendants Mukesh Patel (Chairman of Haven Trust), his brother R.C. Patel, and Edward Briscoe (Haven Trust's President and Chief Executive Officer) shared in the daily operations of the company and the Bank [Id. at ¶¶ 13-14].

From its inception, Haven Trust grew at a rapid pace, from $29 million in assets in its first year of operation in 2000 to approximately $575 million by 2008 [Id. at ¶ 35]. This rapid growth was largely predicated on the use of non-core funding, including brokered deposits, which were used for risky acquisition, development, and construction (ADC) loans and other types of commercial real estate (CRE) lending [Id. at ¶¶ 38-44]. Haven Trust initially marketed itself to the Indian and Asian-American communities and likewise focused much of its efforts to sell the company's common stock to those communities [Doc. No. 23, ¶ 33].

The defendants solicited investors through private placement memoranda (PPM's), which were drafted and approved by the defendants [Id. at ¶¶ 22 and 26]. The first stock offering was in

March 2006, with a second offering in March 2008 [Id. at ¶¶ 61-71 and 73-88].  The plaintiffs contend that the 2006 and 2008 PPM's concealed the true financial condition and business operations of Haven Trust and specifically failed to disclose the Bank's excessively risky lending practices, the defendants' self-dealing transactions, violations of laws and regulations related to loan underwriting deficiencies, and the defendants' complete failure to address and correct the numerous known improprieties that had been repeatedly identified by federal and state regulators [Id. at ¶¶ 2-3, 36-37, 45-59].

On December 12, 2008, the Georgia Department of Banking and Finance announced publicly that the Bank had been closed and that the FDIC had been appointed as receiver [Doc. No. 23, ¶ 3].  At that time, the Bank had assets (or outstanding loans) of $572 million and customer deposits of only $515 million [Id. at ¶ 57]. The Bank's collapse rendered Haven Trust's stock worthless, resulting in damage to the plaintiffs' investments [Id. at ¶¶ 37 and 89].

## II.  Legal Standard - 12(b)(6) Motion to Dismiss [Doc. No. 27]

The defendants move to dismiss the plaintiffs' amended complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  A Rule 12(b)(6) motion requires an assessment of

whether the plaintiffs have set forth claims upon which this court may grant relief.  In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, <u>Duke v. Cleland</u>, 5 F.3d 1399, 1402 (11th Cir. 1993).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations:

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007). Ultimately, the complaint is required to contain "only enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974.  But, "[d]ismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised."  <u>Id.</u>  Also, this court applies the traditional pleading requirement of Federal Rule of Civil Procedure 8(a) to the instant motion to dismiss, which requires the complaint to contain only "a short and plain statement of the claim," but also to "provide the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests." <u>Dura Pharmaceuticals, Inc. v.</u>
<u>Broudo</u>, 544 U.S. 336, 346 (2005).  Some of the plaintiffs' claims
may also be subject to the pleading requirements of Federal Rule
of Civil Procedure 9(b), which requires civil plaintiffs alleging
fraud to plead: "(1) the precise statements, documents, or
misrepresentations made; (2) the time and place of and person
responsible for the statement; (3) the content and manner in which
the statements misled the plaintiffs; and (4) what the defendants
gained by the alleged fraud." <u>Ambrosia Coal & Construction</u>
<u>Company v. Morales</u>, 482 F.3d 1309, 1316 (11th Cir. 2007).

"Although authorized by the Federal Rules of Civil Procedure,
the liberal rules as to the sufficiency of a complaint make it a
rare case in which a motion on this ground should be granted."
<u>St. Joseph's Hospital, Inc. v. Hospital Corporation of America</u>,
795 F.2d 948, 953 (11th Cir. 1986).  In light of these standards,
the court reviews the complaint to determine whether dismissal is
warranted.

## III. Analysis

### A.   Counts I and II - Georgia Securities Act Violations

The defendants contend that the plaintiffs' purported "non-
fraud" claims, Counts I and II of the amended complaint, fail
because scienter is an essential element of claims under O.C.G.A.
§§ 10-5-12(a) and 10-5-14(a).  Counts I and II of the amended

5

complaint state that the plaintiffs "expressly exclude and disclaim any allegation sounding in fraud, or intentional, knowing, or reckless conduct" [Doc. No. 23, ¶¶ 90 and 96]. In response, the plaintiffs contend that there is some uncertainty as to whether scienter is required under the Georgia statute. The court agrees with the defendants that Georgia law requires a showing of scienter to state a claim for relief. O.C.G.A. § 10-5-12(a)(2).

As an initial matter, the plaintiffs argue that they are invoking subsection (B) of O.C.G.A. § 10-5-12(a)(2), as opposed to subsections (A) and (C). Aside from the fact that the plaintiffs do not limit their claims in the amended complaint to only subsection (B), the plaintiffs are unable to cite any case law which supports their assertion that subsection (B) does not require a showing of fraud under Georgia law.

Additionally, the plaintiffs rely on Abrams & Wofsy v. Renaissance Investment Corp., 820 F. Supp. 1519 (N.D. Ga. 1993) for the assertion that this court has recognized that O.C.G.A. § 10-5-12(a)(2)(B) tracks the language of the non-fraud provision of § 12(a)(2) of the Securities Act of 1933, but this reliance is inappropriate. Abrams & Wofsy interpreted the pre-1986 version of O.C.G.A. § 10-5-12(a). In 1986, the Georgia Securities Act was altered substantially, and the text of the 1985 version is

markedly different from the operable version of § 10-5-12(a)(2) at issue in this case.  The Georgia Court of Appeals has recognized that the current version of § 10-5-12(a)(2) mirrors Rule 10b-5 promulgated under the Securities Exchange Act of 1934 and has held that it requires a showing of scienter.  See <u>Koeqler v. Krasnoff</u>, 601 S.E.2d 788 (Ga. Ct. App. 2004); <u>GCA Strategic Investment Fund, Ltd. v. Joseph Charles & Associates, Inc.</u>, 537 S.E.2d 677 (Ga. Ct. App. 2000).  While the Georgia Supreme Court and the Eleventh Circuit have not spoken on this issue, the court finds that the interpretation of Georgia law by the Georgia Court of Appeals is sufficient to determine the state of Georgia law on this issue. As the plaintiffs have expressly disclaimed a showing of scienter in Counts I and II, the defendants' motion to dismiss Counts I and II of the amended complaint [Doc. No. 27] is GRANTED.

**B.   Count IV (Federal Rule 10b-5 Claim)**

The defendants contend that this claim should be dismissed for the following reasons: (1) the scienter allegations fail to support an inference of scienter that is at least as compelling as plausible non-culpable inferences; (2) the plaintiffs fail to allege loss causation; (3) the defendants were prohibited by law from disclosing any of the information contained in the bank regulators' confidential reports; and (4) that the remaining

alleged misrepresentations and omissions are not material or otherwise actionable.

The basic elements of a 10b(5) claim are: (1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, known as "loss causation." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341-41 (2005). In alleging such a claim, a plaintiff must comply with the heightened pleading standards imposed by the Private Securities Litigation Reform Act of 1995.

The Reform Act requires that a securities fraud class action complaint:

> specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

The Reform Act also raises the standard for pleading scienter. It states that a plaintiff asserting a securities fraud claim "shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of

8

mind." 15 U.S.C. § 78u-4(b)(2). The requisite state of mind for a 10b-5 claim is an intent to deceive, manipulate, or defraud, or a showing of severe recklessness. Mizarro v. Home Depot, Inc., 544 F.3d 1230, 1238 (11th Cir. 2008). Therefore, in a securities fraud class action, a plaintiff can no longer plead the scienter element generally. Id. Moreover, the complaint must allege facts supporting a strong inference of scienter "for each defendant with respect to each violation." Phillips v. Scientific-Atlanta, Inc., 374 F.3d 1015, 1016 (11th Cir. 2004).

### 1. Scienter

The defendants contend that the amended complaint's scienter allegations fail to support an inference of scienter that is at least as compelling as plausible non-culpable inferences. The court agrees.

Plaintiffs in private securities fraud actions must plead facts in their complaints that raise an inference of scienter that is "more than merely plausible or reasonable - it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, Inc. v. Makor Issues and Rights, Ltd., 551 U.S. 308, 309 (2007). The plaintiffs allege that only three of the named defendants - Mukesh Patel, R.C. Patel, and Edward Briscoe - acted with intent to defraud or reckless

disregard, but fail to plead the strong inference of scienter that is required under the Reform Act.

In this case, the plaintiffs cannot rely on insider trading to demonstrate scienter because the plaintiffs do not allege any insider stock sales by these three defendants. Also, the amended complaint's reliance on the defendants' positions as directors and officers, their attendance at meetings, and access to internal documents and reports is insufficient to allege a strong inference of scienter. See In re Coca-Cola Enterprises Inc. Securities Litigation, 510 F. Supp. 2d 1187, 1200-1201 (N.D. Ga. 2007) (finding that general allegations of defendants' positions and their general duty to monitor information is insufficient to find a strong inference of scienter). The plaintiffs also allege that R.C. Patel, Mukesh Patel, and Briscoe were motivated to commit fraud in order to maintain a dividend stream [Doc. No. 23, ¶ 114], but the motivation to maintain a dividend stream does not establish scienter because it is closely analogous to the desire to sustain a company's stock price, which courts have held does not support a strong inference of scienter. See, e.g., In re Homebanc Corporate Securities Litigation, 706 F. Supp. 2d 1336, 1358 (N.D. Ga. 2010). The plaintiffs also allege that certain loans made to R.C. Patel's adult children show the "excessively risky" lending practices of the Bank [Doc. No. 23, ¶ 109], but

10

while these practices may be relevant to a shareholder derivative claim for corporate mismanagement, the court does not find these practices relevant to determining scienter of the defendants in this matter.

When the court views the amended complaint's allegations holistically, as required under the Reform Act, the reasonable inferences showing culpable motive are not as compelling as those showing non-culpable, innocent behavior. <u>Tellabs</u>, 551 U.S. 323. Since the plaintiffs did not allege a strong inference of scienter, their Rule 10b-5 claim fails as a matter of law.

### 2.   Loss Causation

The plaintiffs also fail to allege loss causation.   To demonstrate loss causation, a plaintiff must allege that "the untruth was in some reasonably direct, or proximate, way responsible for his loss."   <u>Id.</u> at 1361.   Thus, even if a defendant's misconduct induces the plaintiff to make the investment, if the plaintiff's loss is caused by supervening general market forces or other factors unrelated to the defendant's misconduct that operated to reduce the value of the plaintiff's securities, the plaintiff is precluded from recovery under Rule 10b-5.

In this case, the plaintiffs allege that the FDIC's December 2008 announcement that it was taking over the Bank caused the loss

in value of the plaintiffs' stock [Doc. No. 23, ¶ 89].  However, this allegation does not establish that the defendants' alleged misrepresentations and omissions caused the plaintiffs' loss, but instead establishes that the loss was caused by the FDIC's decision to close the Bank due to the effect of the subprime mortgage and financial crises on the Bank's loan portfolio and the value of its real estate collateral.  This court has held that "[w]hen the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases, and a plaintiff's claim fails when it has not adequately pled facts which if proven would show that its loss was caused by the alleged misstatements as opposed to intervening events." Homebanc, 706 F. Supp. 2d at 1361-62 (citing Lentell v. Merrill Lynch & Co., 396 F.3d 161, 174 (2d Cir. 2005)).  In this case, the plaintiffs have not offered any facts distinguishing between losses caused by the defendants' alleged misrepresentations and the intervening events that wreaked havoc on the banking industry as a whole.  As such, the plaintiffs have not adequately alleged loss causation, and their 10b-5 claim fails as a matter of law.

### 3.   Conclusion

Since the court has found two bases for dismissal of the plaintiffs' Rule 10b-5 claims, the court will not discuss the remainder of the defendants' contentions as to why the plaintiffs' amended complaint fails to state a claim upon which relief may be granted.  For the reasons stated above, the plaintiffs' Rule 10b-5 claim fails as a matter of law.

### C.   Control Person Liability - Count V

As stated above, the amended complaint fails to state a claim against any defendant for a primary 10b-5 violation.  As such, there can be no claim for "control person" liability under Section 20(a), 15 U.S.C. § 78t(a).  As such, Count V of the plaintiffs' amended complaint fails as a matter of law.

### D.   Count III - Negligent Misrepresentation Claim

The defendants contend that the plaintiffs' negligent misrepresentation claim fails because the plaintiffs did not directly communicate with the defendants.  The plaintiffs respond that as control persons of Haven Trust who issued and were identified in the allegedly misleading PPM's, the defendants were effectively in privity with Haven Trust.  The plaintiffs also contend that the court should make an exception to the direct communication rule because Georgia courts make an exception to this rule "where a known third party's reliance was the desired

13

result of this representation." Robert & Company Associates v. Rhodes-Harvey Partnership, 300 S.E.2d 503, 504 (Ga. 1983).

In Holmes v. Grubman, 691 S.E.2d 196 (Ga. 2010), the Georgia Supreme Court answered certified questions from the Second Circuit Court of Appeals as to whether Georgia common law recognizes fraud and negligent misrepresentation claims based on forbearance in the sale of publicly traded securities. In Holmes, the court stated that a negligent misrepresentation claim is viable only when a plaintiff can allege and prove direct communication with a defendant and specific reliance on that defendant's communication. Id. at 641. Here, the plaintiffs do not allege any direct communication with any defendant. The only specific communications which the plaintiffs cite are the 2006 and 2008 PPM's, but these documents are communications of the company, rather than of the individual defendants. As a result, the plaintiffs have not alleged a direct communication between themselves and the defendants.

The plaintiffs also contend that the defendants were in privity with Haven Trust. Although the plaintiffs emphasize that the defendants were "control persons" of Haven Trust, Georgia courts have consistently held that "[t]he mere operation of [a] corporate business does not render [a corporate officer] personally liable for corporate acts." Fussell v. Jones, 401

14

S.E.2d 593, 594 (Ga. Ct. App. 1991). Also, the plaintiffs' reliance on Robert & Company is misplaced. In Robert & Company, a third party sought to hold an engineering firm liable for defects in an inspection report, but there was no dispute that the engineering firm had made the statement. In contrast, in this case, the plaintiffs allege that the defendants should be liable for the statements of an entirely separate entity. Allowing a claim against the defendants for negligent misrepresentation based solely on Haven Trust's PPM's would be contrary to Georgia law.

As the plaintiffs have not alleged any direct communication between themselves and the defendants, and as the plaintiffs' proposed exception is inapplicable here, the plaintiffs' negligent misrepresentation claim fails as a matter of law.

### E.   Counts VI, VII, and VIII

As an initial matter, the court notes that the plaintiffs did not comply with this court's earlier order regarding recasting their complaint to avoid shotgun pleading [Doc. No. 22]. Counts VI, VII, and VIII contain the identical opening sentence: "Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein" [Doc. No. 23, ¶¶ 130, 141, and 147]. As such, the plaintiffs again failed to specify which allegations of fact support which causes of action.

Therefore, the court could dismiss these counts for failure to obey a court order.

However, given that a considerable length of time has passed since the plaintiffs filed their amended complaint and given the defendants' motion to dismiss, the court will briefly address these counts on the merits. The court finds that these counts contain mere recitals of the elements of the claims; as such, the plaintiffs have run afoul of <u>Twombly</u> and failed to comply with the pleading standards of the Federal Rules of Civil Procedure. Also, for the reasons discussed above, the plaintiffs failed to plead the scienter and loss causation necessary for their securities and fraud claims under Georgia law. Additionally, as the defendants are not subject to primary liability under Georgia securities law, they cannot be subject to secondary liability as "control persons" under Georgia law. As such, Counts VI, VII, and VIII fail as a matter of law.

## IV.  Conclusion

For the reasons stated above, the defendants' motion to dismiss [Doc. No. 27] is GRANTED. The clerk is DIRECTED to close this action.

SO ORDERED, this <u>14th</u> day of January, 2011.

> /s/ Charles A. Pannell, Jr.
> CHARLES A. PANNELL, JR.
> United States District Judge